IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:23-cv-01366-CNS-MDB

GINA MCCLAFLIN,

    Plaintiff,

v.

SANOFI-AVENTIS U.S. LLC,
SANOFI-AVENTIS U.S. LLC d/b/a Winthrop U.S., and
SANOFI U.S. SERVICES, INC. f/k/a Sanofi-Aventis U.S., Inc.,

    Defendants.

---

# ORDER

---

    This lawsuit involves a chemotherapy drug called Taxotere, commonly administered to patients diagnosed with breast cancer. Defendants Sanofi U.S. Services, Inc. and Sanofi-Aventis U.S., LLC (collectively Sanofi) manufacture, label, and distribute Taxotere. Plaintiff Gina McClaflin was diagnosed with breast cancer, underwent surgery to treat her cancer, and, as part of her chemotherapy regimen, her doctors administered Taxotere. Ms. McClaflin alleges that the drug—which she took in 2007—caused her to suffer permanent hair loss. She filed this lawsuit in December 2017, asserting claims against Sanofi for negligence, strict liability, and fraud.

    This matter comes before the Court on Sanofi's Motion for Summary Judgment. ECF No. 55. Because the Court finds that all of Plaintiff's claims are barred by the

1

applicable statute of limitations, Sanofi's motion is GRANTED.

## I.   FACTUAL BACKGROUND[1]

Gina McClaflin is a 46-year-old woman who lives in Colorado. ECF No. 55, ¶ 1. She was diagnosed with breast cancer on August 22, 2007. *Id.*, ¶ 2. To treat her breast cancer, Ms. McClaflin underwent surgery and chemotherapy in Colorado. *Id.*, ¶ 3. As part of her chemotherapy regimen, Ms. McClaflin was administered Taxotere from October 18, 2007, to December 21, 2007. *Id.*, ¶ 4. "Taxotere is a chemotherapy drug administered to many who suffer primarily from breast cancer." ECF No. 6-26 (Second Amended Master Long Form Complaint and Demand for Jury Trial), ¶ 4.

Ms. McClaflin stated in discovery that since October 2007, she has experienced permanent or persistent loss of her eyebrows and eyelashes, and a change in the texture, thickness, and color of her hair. *Id.*, ¶ 8. Her Complaint defines permanent hair loss— sometimes called permanent chemotherapy-induced alopecia (PCIA)—as the "absence of or incomplete hair regrowth six months beyond the completion of chemotherapy." *Id.*, ¶ 7 (citing Second Amended Master Long Form Complaint and Demand for Jury Trial, ¶ 181). For Ms. McClaflin, as explained below, that would have been June 2008. *Id.*

---

[1] The following factual recitation is drawn from Defendants' motion, ECF No. 55, Plaintiff's response, ECF No. 58, Defendants' reply, ECF No. 60, and certain exhibits accompanying each. For purposes of the analysis below, the Court construes these facts in the light most favorable to Plaintiff, the non-moving party. *See Allen v. Muskogee, Okla.*, 119 F.3d 837, 840 (10th Cir. 1997). But as noted below, Ms. McClaflin did not properly respond to or deny Sanofi's 33 undisputed facts. ECF No. 55 at 6–10. The Court, therefore, may consider those facts undisputed. *Kirch v. Embarq Mgmt. Co.*, 702 F.3d 1245, 1250 (10th Cir. 2012) ("In a summary-judgment proceeding a party's assertion of undisputed facts is ordinarily credited by the court unless properly disputed by the opposing party"); *see also* Fed. R. Civ. P. 56(e)(2) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."). Still, the Court conducted its own independent review of Sanofi's citations to the record (primarily citations to Ms. McClaflin's deposition testimony) and found that the citations sufficiently support the facts asserted.

Ms. McClaflin began losing her hair during chemotherapy after her first Taxotere infusion, and by the end of chemotherapy, she had lost all the hair on her head. *Id.*, ¶¶ 11–13. Although some of her hair began to regrow in early 2008, it did not regrow the way she expected and wanted. *Id.*, ¶ 15.

Roughly two years after completing chemotherapy, Ms. McClaflin's hair stopped growing in length and was "brittle," "thin," and "frail." *Id.*, ¶ 18. At this time, she described her hair as the "new normal." *Id.* (quoting ECF No. 55-2 (McClaflin Dep.) at 182:5–183:12).

Ms. McClaflin attributed her hair loss to chemotherapy, and she has never attributed her hair loss to anything other than her chemotherapy treatment. *Id.*, ¶¶ 14, 23; *see also* McClaflin Dep. at 174:5–9 ("Q: Have you ever attributed your hair loss to anything other than your chemotherapy? A: No, because . . . I had it before, . . . thick and dark and volume, and . . . it's never been the same since."). When asked how she knew she had "permanent hair loss," Ms. McClaflin stated that, "after I was done with [] Taxotere, my hair did not grow back the way it was before, my eyebrows, my eyelashes, and some of the hair on my head. A different texture than before." McClaflin Dep. at 18:9–20:8. Ms. McClaflin also testified that she knew Taxotere caused her "permanent hair loss," stating that "I had very thick hair before I took [] Taxotere. It was full of volume and just thicker and wavy. And I had thick, full eyebrows, and long eyelashes and all that before it was taken; and it did not grow back the same way." *Id.* at 20:21–21:8.

Despite experiencing permanent hair loss shortly after completing chemotherapy, Ms. McClaflin did not seek treatment or investigate the cause of her hair loss with her

3

physician or dermatologist. *Id.* at 20:17–20, 177:25–178:23 ("Q: Have you ever sought a doctor's opinion on whether you have permanent hair loss? A: No."); *id.* at 191:8–15 ("Q: Now, you mentioned earlier that you had never discussed the regrowth with a physician or a dermatologist; is that right? A: Yes, as far as I remember.").

## II.   PROCEDURAL BACKGROUND

Prior to transfer to the District of Colorado, Ms. McClaflin's case was one of more than 10,000 cases pending in the *In re Taxotere (Docetaxel) Products Liability Litigation* Multidistrict Litigation (E.D. La., MDL No. 2740). The MDL cases were consolidated for pretrial purposes. Each plaintiff in the MDL alleged that they developed permanent hair loss after taking Taxotere. In May 2023, the MDL determined that no further pretrial motions were pending and therefore transferred numerous cases to the appropriate districts, including Ms. McClaflin's case. ECF No. 8 (MDF Transfer Order). The Transfer Order noted that receiving courts should "expect to address case-specific motions for summary judgment on dispositive issues, such as the statute of limitations," *id.* at 45—which is the basis of Sanofi's instant motion. ECF No. 55.

On December 11, 2017, Ms. McClaflin filed suit against Sanofi in this Court. ECF No. 1 (Amended Short Form Complaint). Ms. McClaflin asserted six claims for relief: (1) strict products liability – failure to warn; (2) negligence; (3) negligent misrepresentation; (4) fraudulent misrepresentation; (5) fraudulent concealment; and (6) fraud and deceit. *Id.*, ¶ 13. Plaintiff's Amended Short Form Complaint expressly "incorporates by reference the Master Long Form Complaint and Jury Demand filed in the above-referenced case on March 31, 2017." *Id.* at 1.

4

### III.  LEGAL STANDARDS GOVERNING SUMMARY JUDGMENT

Summary judgment is warranted when (1) the movant shows that there is no genuine dispute as to any material fact and (2) the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[T]he dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Allen v. Muskogee, Okla.*, 119 F.3d 837, 839 (10th Cir. 1997); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Wright ex rel. Tr. Co. of Kan. v. Abbott Lab'ys, Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (quotations omitted)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *see also Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000).

"To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 876 (10th Cir. 2004). The factual record and reasonable inferences must be construed in the light most favorable to the nonmoving party. *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). The moving party bears "the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Adler*, 144 F.3d at 670–71. If met, "the burden shifts to the nonmovant to go beyond the pleadings and set forth specific facts

that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Id.* at 671 (citations and quotations omitted).

Ultimately, the Court's inquiry on summary judgment is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted).

## IV.  ANALYSIS

Sanofi moves for summary judgment on statute of limitations grounds. ECF No. 55. The Court explains below why it agrees with Sanofi that Plaintiff's claims are clearly time-barred.

### A.  Applicable Statute of Limitations

The parties agree that Colorado law governs this dispute. They also agree on the applicable limitation periods. ECF No. 55 at 11; ECF No. 58 at 5–6. Plaintiff's negligence and strict liability claims are subject to Colorado's two-year statute of limitations for product liability claims, Colo. Rev. Stat. § 13-80-106(1), and her fraud claims are subject to a three-year statute of limitations. Colo. Rev. Stat. § 13-80-101(1)(c).

### B.  Plaintiff's Negligence and Strict Liability Claims

In Colorado, negligence and strict liability claims accrue "on the date both the injury and its cause are known or should have been known by the exercise of reasonable

diligence." Colo. Rev. Stat. § 13-80-108(1). "Once a plaintiff has suspicion of wrongdoing, she is under a duty to attempt to find the facts." *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 887 (10th Cir. 2005) (applying Colorado law and citing *Trinity Broad. of Denver, Inc. v. City of Westminster,* 848 P.2d 916, 926–27 (Colo. 1993)). "Uncertainty as to the full extent of the damage does not stop the accrual of a cause of action." *Id.* (citing *Taylor v. Goldsmith,* 870 P.2d 1264, 1266 (Colo. App. 1994)).

"The requirement that a plaintiff use due diligence in discovering the relevant circumstance or event imposes an objective standard and does not reward denial or self-induced ignorance." *Sulca v. Allstate Ins. Co.*, 77 P.3d 897, 900 (Colo. App. 2003). "A plaintiff is responsible for determining who is liable for her injury and for doing so before the statute of limitations expires." *Lavarato v. Branney*, 210 P.3d 485, 489 (Colo. App. 2009). This responsibility exists even if several parties may be responsible for the plaintiff's injury. *Kohler v. Germain Inv. Co.,* 934 P.2d 867, 869 (Colo. App. 1996) (the fact that various parties may be liable for an injury does not excuse a plaintiff from the statutory obligation to exercise reasonable diligence in determining the responsible party).

The time when a plaintiff should have discovered a defendant's negligent conduct is generally a question of fact for the jury to resolve. *Colburn v. Kopit*, 59 P.3d 295, 297 (Colo. App. 2002). "But where it is shown that the plaintiff discovered, or reasonably should have discovered, the alleged tortious conduct as of a particular date, the statute of limitations issue may be decided as a matter of law." *Id.*; *see also Kohler v. Germain Inv. Co.*, 934 P.2d 867, 869 (Colo. App. 1996) ("[I]f the relevant facts and inferences are

7

not in dispute relative to application of the statute of limitations, that question may be resolved as a matter of law.").

Here, for purposes of the instant motion, the material facts are not in dispute. As required by this Court's Civil Practice Standards, Defendants set forth 33 purported undisputed facts. ECF No. 55 at 6–10. Each undisputed fact was accompanied by a specific reference to material in the record. *Id.* Defendants generally referenced Plaintiff's deposition testimony. *See id.* The Court's Civil Practice Standards require the opposing party to admit or deny the movant's asserted material facts in a "separate correspondingly numbered paragraph." CNS Civ. Practice Standard 7.1D(b)(4). Plaintiff failed to do so.

Rather than complying with Civ. Practice Standard 7.1D(b)(4), Plaintiff stated in a footnote that she "does not agree with the content and characterization of testimony set out in Defendants' 'Statement of Undisputed Facts.'" ECF No. 58 at 3 n.1. Such blanket denials are insufficient at this stage. *See Butler v. Daimler Trucks N. Am., LLC*, 74 F.4th 1131, 1151 (10th Cir. 2023) ("General denials . . . cannot be utilized to avoid summary judgment." (quotation omitted)).

Plaintiff goes on to argue some facts in her "factual background" section, but these facts are thin, vague, and generally inconsistent with her deposition testimony. *Compare* ECF No. 58 at 3 ("It was not until a few months prior to filing this lawsuit that Plaintiff knew that her hair loss might be permanent"), *with* McClaflin Dep. at 19:24–20:3 ("Q: [Y]ou just said that you know you have permanent hair loss because after your [] Taxotere finished [in 2007], your hair did not grow back; is that correct? A: Correct."), *and id.* at 182:5–183:12 (two years after completing chemotherapy, she described her "new normal" hair

8

texture as brittle, thin, and frail). In any event, Plaintiff's blanket denial and barebone factual background section are insufficient to overcome Defendants' undisputed facts—which are based on Plaintiff's sworn testimony.

After reviewing the record, the Court finds that Plaintiff knew or should have known of her injury—the permanent hair loss—and its cause—Taxotere—by 2009 at the latest.

For the former (the injury), Plaintiff testified that her "new normal" hair was "brittle," "thin," and "frail," and that it had stopped growing in length. McClaflin Dep. at 182:5–183:12. This occurred about two years after completing chemotherapy in December 2007. *Id.* It follows that by December 2009, she knew or should have known of her permanent hair loss. *Id.* at 174:5–9 (testifying that she has never attributed her hair loss to anything other than chemotherapy). Plaintiff also testified that she began tattooing her eyebrows in 2009 because, by then, she expected her eyebrows would grow back but they had not. McClaflin Dep. at 181:6–13 (Q: Why did you get your eyebrows tattooed in 2009? A: By then, I had expected [my eyebrows] to grow back. I mean, it had been a year and a half."). By her own definition, her hair loss was permanent. *See* Second Amended Master Long Form Complaint and Demand for Jury Trial, ¶ 181 (defining permanent hair loss as the "absence of or *incomplete hair regrowth six months beyond the completion of chemotherapy*" (emphasis added)).

And for the latter (the cause of her injury), Plaintiff's testimony makes clear that she understood that Taxotere was the cause of her permanent hair loss. McClaflin Dep. at 19:24–20:3 ("Q: [Y]ou just said that you know you have permanent hair loss because after your [] Taxotere finished, your hair did not grow back; is that correct? A: Correct.").

Even if she did not know the exact cause by 2009, the law requires that she exercise reasonable diligence to learn the cause of her injury. Colo. Rev. Stat. § 13-80-108(1).

Reasonable diligence includes investigating facts that are "readily ascertainable" from "publicly available" information. *Skyland Metro. Dist. v. Mtn. West Enter.*, 184 P.3d 106, 127 (Colo. App. 2007). Here, there was sufficient publicly available information pointing to Taxotere as the source of Plaintiff's injury. The Court need only look to the Second Amended Master Long Form Complaint itself. There, the Taxotere plaintiffs cite articles reporting a link between Taxotere and permanent hair loss: medical journals from 2006 and later; a March 2010 article from The Globe and Mail explaining that "[w]omen who took a drug to fight breast cancer say they were never warned of a side effect— permanent hair loss"; and a March 2010 CBS News article titled "Sanofi's Latest Challenge: Women Who Say Its Chemotherapy Left Them Permanently Bald," where a group of women called themselves "Taxotears" after permanently losing their hair. Second Amended Master Long Form Complaint, ¶¶ 150–62. Thus, according to Plaintiff's theory of the case, these articles describe the necessary link between Taxotere and permanent hair loss. As other courts have found, this Court finds that, had Plaintiff exercised reasonable diligence, she would have known of her injury and its cause by March 2010 at the latest.[2] *See, e.g.*, *In re Taxotere (Docetaxel) Prod. Liab. Litig.*, 995 F.3d 384, 393 (5th Cir. 2021) (citing these articles and finding that a reasonable inquiry by the Taxotere plaintiffs would have uncovered these articles); *Ali v. Sanofi-Aventis U.S.*

---

[2] The Court acknowledges that it has already found that Plaintiff's claims began to accrue in December 2009, four months before CBS News and The Globe and Mail articles were published. But even if the Court granted Plaintiff an extra four months, the outcome would not change, as she did not file until December 2017.

10

*LLC*, No. 3:23-CV-02694-JSC, 2023 WL 6390592, at *5 (N.D. Cal. Sept. 29, 2023) (same).[3]

Finally, Plaintiff states in her opposition that her treating oncologist did not warn her about the possibility of permanent hair loss before treatment. ECF No. 58 at 3. This fact, however, cuts in Defendants' favor. If Plaintiff's oncologist told her that her hair loss would be temporary *before taking the drug*, yet she experienced permanent hair loss *two years after taking the drug*, it was her "duty to attempt to find the facts" and the cause of her hair loss. *Norris*, 397 F.3d at 887 (applying Colorado law); *see also Lavarato*, 210 P.3d at 489 (plaintiffs are responsible for "determining who is liable for her injury and for doing so before the statute of limitations expires"). Yet she did not seek treatment or investigate the cause of her hair loss with her physician or dermatologist. McClaflin Dep. at 20:17–20; 177:25–178:23; 191:8–15.

The law, at times, is unforgiving. But here, the standard is what Plaintiff knew or should have known by the exercise of reasonable diligence. Colo. Rev. Stat. § 13-80-108(1). And the material facts of when Plaintiff learned of her injury are not in dispute.

---

[3] The Court also finds that Plaintiff has essentially admitted that reasonable diligence would have uncovered these articles and studies by citing them in the Second Amended Master Long Form Complaint. *See Ali*, 2023 WL 6390592, at *5 (finding Taxotere plaintiff, through the master complaint, "admitted with reasonable diligence she could have discovered a link between her unexpected hair loss and Taxotere"); *Maxwell v. Sanofi-Aventis U.S. LLC*, No. 2:23-cv-696, 2023 WL 7115575, at *4 (N.D. Ala. Oct. 27, 2023) (finding that Taxotere plaintiff "plead h[er]self out of court by alleging facts that foreclose a finding of diligence or extraordinary circumstances, both of which are required for equitable tolling" (quoting *Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 971 (11th Cir. 2016) (en banc))); *see also Prograde Ammo Grp. LLC v. Perry*, No. 14-CV-00884-PAB-MEH, 2015 WL 1064266, at *4 (D. Colo. Mar. 9, 2015) ("Allegations in a complaint or counterclaim are binding judicial admissions, which can properly be entertained on a motion to dismiss.") (collecting cases); *Hakopian v. Mukasey*, 551 F.3d 843, 846 (9th Cir. 2008) ("Allegations in a complaint are considered judicial admissions."). Thus, Plaintiff's arguments to the contrary are unavailing. *See* ECF No. 58 at 8 (arguing that a "reasonable person in Plaintiff's position . . . had no reason to know she had suffered an injury or that Defendants intentionally withheld knowledge of her injury and its cause.").

Even construing the facts in the light most favorable to Plaintiff, the record plainly shows that Plaintiff had a "suspicion of wrongdoing" within two years of her chemotherapy. Had she employed reasonable diligence to investigate the wrongdoing, all roads would have led to Defendants, the manufacturer of Taxotere. Because Plaintiff did not file suit until 2017, over seven years after learning of her injury and the cause of that injury, Plaintiff's negligence and strict liability claims are time-barred by Colorado's two-year statute of limitations. *See* Colo. Rev. Stat. §§ 13-80-106(1), 13-80-108(1).

### C.    Plaintiff's Fraud Claims

Plaintiff's fraud claims accrued on the date the alleged fraud was "discovered or should have been discovered by the exercise of reasonable diligence." Colo. Rev. Stat. § 13-80-108(3). Defendants characterize Plaintiff's fraud claims as "repackaged failure-to-warn claims" because Defendants concealed the risk of permanent hair loss associated with Taxotere. Plaintiff offers little rebuttal. In her background section, she states that "defendants had known for years, but failed to warn, that Taxotere could cause permanent hair loss." ECF No. 58 at 3 (citing McClaflin Dep. at 17:9-16; 17:23-25; 18:19-23). The Court, however, has reviewed the testimony cited, and Plaintiff did not testify that Defendants had known for years that Taxotere causes permanent hair loss.[4]

---

[4] Plaintiff also states that "Defendants knew as far back as 2006 that Taxotere could cause permanent hair loss but did not disclose this in information for users of their product. **Exhibit C**, **Exhibit D**." ECF No. 58 at 4. Exhibit D is a 68-page Sanofi brochure. Plaintiff provides no pincite to the unsearchable document, and the Court declines to search for language that might support Plaintiff's assertion. Exhibit C is a deposition transcript of Amy Freedman. Because Plaintiff only provides two pages of Ms. Freedman's testimony, and because Plaintiff did not offer any other context for this exhibit, the Court is unable to discern from the record Ms. Freedman's title and role. However, Ms. Freedman did testify that Sanofi was aware by 2006 that its "product could cause irreversible alopecia," but she also testified that it was "appropriately labeled" as such. ECF No. 58-3 (Freedman Dep. at 196:14–21).

Like Plaintiff's negligence and strict liability claims, the Court finds that Plaintiff's fraud-based claims began to accrue no later than 2009. By then, she was aware of the injury and the cause. Even if Defendants did fraudulently conceal or misrepresent the side effects of Taxotere as Plaintiff alleges, the law required Plaintiff to exercise reasonable diligence to discover the fraud. Colo. Rev. Stat. § 13-80-108(3). She did not do so. The Court has already explained why it concluded that a harmed person in Plaintiff's situation could have discovered the cause of the injury as early as 2009. Although it will not repeat that analysis here, those findings apply with equal force to Plaintiff's fraud claims. Because Plaintiff did not file her lawsuit until December 11, 2017—long after the three-year statute of limitations expired on her fraud claims—her claims are time-barred.

### D. Equitable Tolling

Plaintiff appears to argue that her claims are not time-barred, citing the equitable tolling doctrine. *See* ECF No. 58 at 2. The principle underlying equitable tolling is intended to prevent a defendant from benefiting from its own wrongdoing. *Dean Witter Reynolds, Inc. v. Hartman*, 911 P.2d 1094, 1096–97 (Colo. 1996). The doctrine is also intended to avoid penalizing a plaintiff for circumstances beyond the plaintiff's control. *Id.* (citing cases from the Civil War era and World War II, including *Osbourne v. United States,* 164 F.2d 767 (2d Cir. 1947), where the Second Circuit held that the plaintiff's internment by Japan during World War II tolled limitations period on the plaintiff's claim arising immediately prior to his internment). Accordingly, "an equitable tolling of a statute of limitations is limited to situations in which either [a] the defendant has wrongfully impeded the plaintiff's

13

ability to bring the claim or [b] truly extraordinary circumstances prevented the plaintiff from filing his or her claim despite diligent efforts." *Id.* at 1099.

Plaintiff, however, has not produced any evidence showing Defendants wrongfully impeded her ability to bring her claims. Nor has she argued—let alone shown—that there were extraordinary circumstances impeding her ability to file a timely claim. Consistent with the Court's findings above, there is no basis to equitably toll the statute of limitations. *See In re Taxotere (Docetaxel) Prod. Liab. Litig.*, 995 F.3d at 395 (finding that the Taxotere plaintiffs could not show that Sanofi prevented the plaintiffs from availing themselves of their cause of action); *Maxwell v. Sanofi-Aventis U.S. LLC*, No. 2:23-cv-696, 2023 WL 7115575, at *4 (N.D. Ala. Oct. 27, 2023) (finding that the Taxotere plaintiff was not entitled to equitable tolling because the articles cited in the Master Complaint suggested that the plaintiff "could have discovered her cause of action through reasonable diligence").

\* \* \*

In sum, the Court finds the absence of a genuine dispute of material facts as to when Plaintiff's claims began to accrue. The following timeline of undisputed facts bears this out.

> ➢ **August 22, 2007**: Plaintiff was diagnosed with breast cancer.
>
> ➢ **October 18, 2007–December 21, 2007**: Plaintiff was administered Taxotere as part of her chemotherapy regimen.
>
> ➢ **2009**: Plaintiff began getting her eyebrows tattooed because, by then, she did not expect her eyebrows to grow back.
>
> ➢ **December 2009**: Two years after completing chemotherapy, Plaintiff's hair had stopped growing to the length she

> expected, and it was brittle, thin, and frail. She believed this was a permanent state, as she described it as her "new normal." And she attributed her hair loss to chemotherapy. *Thus, Plaintiff's claims began to accrue, at the latest, by December 2009*. Put another way, by this time, Plaintiff knew or should have known about her permanent hair loss and its cause.
>
> ➢ **December 2011**: The statute of limitations expired on Plaintiff's negligence and strict liability claims.
>
> ➢ **December 2012**: The statute of limitations expired on Plaintiff's fraud-based claims.
>
> ➢ **December 11, 2017**: Plaintiff filed her lawsuit, six years too late for her negligence and strict liability claims, and five years too later for her fraud claims.

As illustrated above, Plaintiff's claims are time-barred.

### E. Amendment of Pleadings

Defendants argue that permitting Plaintiff leave to amend her Complaint would be futile because her sworn testimony in the case makes clear that she knew of her injury and its cause by at least 2009—seven years before filing her lawsuit. ECF No. 55 at 18. Plaintiff did not respond to this argument.

When a party files a proper motion for leave to amend, Federal Rule of Civil Procedure 15(a) provides that leave should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Calderon v. Kansas Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1185 (10th Cir. 1999). However, district courts may "deny leave to amend where amendment would be futile." *Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Id.* (quoting *Jefferson County Sch. Dist. v. Moody's Investor's Servs.*, 175

15

F.3d 848, 859 (10th Cir. 1999)).

Here, the Court finds that amendment would be futile, as Plaintiff's deposition testimony and the entire record demonstrate that her claims began to accrue by 2009 at the latest. Thus, she was required to file her negligence and strict liability claims by December 2011 and her fraud claims by December 2012. Because Ms. McClaflin did not do so until December 2017, no amendment could cure this deficiency, and the Court will dismiss her Complaint with prejudice. *Gee v. Pacheco*, 627 F.3d 1178, 1181 (10th Cir. 2010) (affirming dismissal with prejudice of claims as barred by the statute of limitations); *McGowan v. Wal-Mart Stores*, 757 F. App'x 786, 788 n.3 (10th Cir. 2019) ("A dismissal based on timeliness would ordinarily be with prejudice.").

## V.   CONCLUSION

The undisputed evidence establishes that Plaintiff knew of her injury and its cause by 2009 at the very latest. Because Plaintiff did not file suit until 2017, her claims are barred by the applicable statute of limitations. Therefore, the Court must GRANT Sanofi's Motion for Summary Judgment. ECF No. 55. The Clerk of Court is directed to close this case.

DATED this day of 9th day of April 2024.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge